UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| HEIL CO. and | ) | |
| BURLINGTON INSURANCE CO., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No: 1:05-cv-284 |
| | ) | |
| v. | ) | Chief District Judge Curtis L. Collier |
| | ) | |
| EVANSTON INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the Court is the motion for summary judgment filed by Defendant Evanston Insurance Company ("Evanston") (Court File No. 81). Plaintiffs failed to respond by the deadline set by E.D.TN. L.R. 7.1(a), but instead submitted a late-filed motion for an extension of time to respond to Defendant's summary judgment motion (Court File No. 83). The Court generously extended the deadline to February 20, 2009 (Court File No. 84). However, Plaintiffs also failed to respond by the extended deadline.[1] Thus, the Court reviews the motion for summary judgment without the benefit of Plaintiffs' counter-arguments.[2] For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 81).

## I.    RELEVANT FACTS

---

[1]On February 25, Plaintiffs filed a response to Defendant's summary judgment motion and another motion for an extension of time to respond (Court File Nos. 87, 89), which was denied (Court File No. 99).

[2]Although Plaintiffs response to Defendant's summary judgment motion (Court File No. 87) was untimely, the Court did read and is familiar with the contents of the response.

This action stems from a previous lawsuit adjudicated in Alabama. Plaintiff Heil Company ("Heil") was sued by the survivors of Willie Evans on January 7, 2004. Heil selected Alabama attorney Tony Hebson ("Hebson") to defend Heil in the lawsuit. Hebson, however, neglected to timely respond to the pleadings and discovery requests, and the Alabama trial court entered default judgment against Heil in the amount of $4 million as a sanction. Heil subsequently settled the lawsuit, but the default judgment was not set aside.

Evanston insured Heil under a commercial policy that contained liability coverage. The policy contained a self-insured retention provision requiring Heil to provide proper defense and investigation of any claim until the amount exceeded $500,000. The provision stated, in bold: "Compliance with this clause is a condition precedent for coverage under this policy. In the event of the failure of the Insured [Heil] to comply with this clause, no loss, cost or expense shall be payable by the Company [Evanston]." Evanston denied coverage of the Alabama lawsuit based on this provision, asserting Heil had failed to provide a proper defense.

Burlington Insurance Company ("Burlington") insured Heil under an excess liability policy. Burlington has not, apparently, stated its coverage position with regard to the default judgment.

Heil filed this lawsuit against Burlington and Evanston seeking declaratory relief and damages for breach of contract (Court File No. 1). The Court allowed the realignment of the parties, making Burlington a plaintiff rather than a defendant (Court File No. 74).[3]

II.     STANDARD OF REVIEW

---

[3]The Court also granted Plaintiffs' motion to amend their complaint to add claims under the Tennessee Consumer Protection Act and Tenn. Code Ann. § 56-7-105, however, Plaintiffs did not file an amended complaint following the Court's Order.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    ANALYSIS

Evanston asserts Heil did not fulfill the obligations of the self-insured retention provision and, thus, Evanston had no duty to indemnify Heil for the $4 million default judgment. As Evanston has demonstrated no genuine issue exists as to any material fact, the sole question for the Court is whether, as a matter of law, Plaintiffs cannot prevail. Heil alleges breach of contract and seeks a

3

declaratory judgment as to Evanston's insurance coverage.

A federal court sitting in diversity applies the substantive law of the forum state. *Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447 (6th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Tennessee applies the same rules of construction to the interpretation of insurance policies as other types of contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). The policy's terms are given their plain and ordinary meaning and, absent fraud, overreaching, or unconscionability, the courts enforce provisions where the terms are unambiguous. *Merrimack Mutual Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001) (summarizing Tennessee law concerning insurance policy interpretation).

The terms of the self-insured retention endorsement are not ambiguous. The policy provided: "The insured shall have the obligation to provide, at his own expense, proper defense and investigation of any claim and to accept any reasonable offer of settlement within the Self-Insured Retention" (Court File No. 2, p. 17). Although not a perfect analogy, courts liken such an arrangement to the insured acting as its own primary insurance carrier. *See State Industries, Inc. v. Twin Cities Fire Ins. Co.*, 158 Fed. Appx. 694, 697 (6th Cir. 2005) (citing *Pacific Employers Ins. v. Domino's Pizza*, 144 F.3d 1270, 1276-77) (9th Cir. 1998)). Under the provision, Heil was obligated to provide its own defense until the retained limit of $500,000 was exhausted ("The Insured's obligation to provide for his own defense is terminated upon the exhaustion of the Self-Insured Retention referenced above" (Court File No. 2, p. 17)). The contract placed Heil in the position of a primary insurance carrier, with the right to investigate the claim and control the litigation.

Until the $500,000 was exhausted, Evanston had no duty to defend Heil, although it reserved

4

a right to assume charge of the defense. A California court, interpreting similar language, determined a self-insured retention endorsement eliminated the duty to defend and replaced it with a contingent duty. *General Star Indem. Co. v. Superior Court of Los Angeles County*, 55 Cal. Rptr. 2d 322, 323 (Cal Ct. App. 1996). Here, Evanston's duty to defend was contingent upon the exhaustion of the $500,000 self-insured retention. As the parties do not contend the $500,000 self-insured retention was exhausted prior to the entry of default judgment in the amount of $4 million, Evanston had no duty to defend Heil during the pendency of the Alabama lawsuit.

After interpreting a provision that similarly gave the insurer the right, but not the duty, to defend the insured, a Tennessee court determined "no relationship of trust arises requiring the insurer to exercise any function in protecting the interest of its insured, except to reimburse the insured for loss sustained and paid by the insured, provided such loss is covered by the terms of the policy of indemnity." *Shamrock Homebuilders, Inc., v. Cherokee Ins. Co.*, 486 S.W.2d 548, 553 (Tenn. Ct. App. 1972) (quoting *Haun v. Guaranty Security Ins. Co.*, 453 S.W.2d 84, 95 (Tenn. Ct. App. 1969)). Thus, Evanston had no fiduciary duty to Heil, since it could presume Heil was protecting its own interests through Heil's control of the defense.

Having determined the parties' obligations under the plain language of the policy, the first issue is whether Evanston exercised its right to control the defense and, thus, assumed a duty to defend Heil. If Evanston did so, Heil was relieved of its obligation to defend itself and Evanston cannot use the adequacy of the defense against Heil. After Heil notified Evanston of the lawsuit against it, Evanston assigned the case to Robert C. Avery ("Avery"), a Senior Claims Account Specialist employed by Markel Underwriting Managers, Inc., Evanston's underwriting manager. Avery contacted Hebson and, after some initial confusion as to whether Hebson could correspond

5

directly with Avery, monitored the progress of the case through Hebson. Avery called, e-mailed, and wrote to Hebson several times over the course of the Alabama proceeding to request information about the case. Although Avery did at one point invoke the cooperation clause in the insurance policy, he never directed Hebson to take any action beyond providing Avery with updates and reports on the case. Merely monitoring the litigation is insufficient to show the assumption of a duty to defend. *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America*, 699 F. Supp. 732, 740-41 (S.D. Ind. 1988). Viewing the evidence in the light most favorable to Heil, Evanston at no time attempted to take control of Heil's defense.

The self-insured retention endorsement required Heil to provide "proper defense and investigation of any claim." Evanston contends Heil failed to do so. The Court is unaware of case law interpreting the provision of a "proper defense" as a condition precedent to insurance coverage. Although Tennessee "recognizes the validity of conditions precedent for insurance coverage," courts require a showing of prejudice before the failure to comply with a notice provision will forfeit insurance coverage. *Alcazar v. Hayes*, 982 S.W.2d 845, 848, 856 (Tenn. 1998). The policy reasons justifying the prejudice requirement, however, do not apply in a situation where the insured retains control of the defense. Although Tennessee views insurance policies as a "contract of adhesion drafted by the insurer," *Bill Brown Constitution. v. Glens Falls Ins.*, 818 S.W.2d 1, 12 (Tenn. 1991), when the insured conducts its own defense, it is not at the mercy of the insurer. In addition, most jurisdictions allow an excess liability carrier to recover from a primary insurer for an improper and inadequate defense. *PHICO Ins. Co. v. Aetna Cas. & Surety Co. of America*, 93 F. Supp. 2d 982, 989-90 (S.D. Ind. 2000) (surveying cases from other jurisdictions); *see also* Jane M. Draper, *Liability Insurance: Excess Carrier's Right of Action Against Primary Carrier for Improper or*

6

*Inadequate Defense of Claim*, 49 A.L.R.4th 304 (2008). A provision creating a contractual obligation to provide a proper defense is simply the inverse of the cause of action by an excess insurer against a primary insurer for an improper defense. As an excess insurer may recover from a primary insurer for an inadequate defense, Evanston can certainly enforce a contract that makes provision of a proper defense a condition precedent to coverage.

Since Heil retained control of its defense, the Court must now determine whether Heil fulfilled its obligations to Evanston in the proceeding. In Tennessee, an insured must show bad faith in order to recover from an insurer who assumes control of the litigation. *Tennessee Farmers Mut. Ins. Co. v. Hammond*, 306 S.W.2d 13, 19 (Tenn. Ct. App. 1957). However, this arises from the duty of good faith and fair dealing that Tennessee implies in every insurance contract. *Id.* The self-insured retention endorsement in this case requires Heil to provide "proper defense and investigation" and accept "any reasonable offer of settlement." From this language, it appears the clear intention of the parties was to hold Heil's duty to defend to a standard of reasonableness.

Under Tennessee law, an insured is vicariously liable for the acts of its attorney when it exercises actual control over the attorney.[4] *Givens v. Mullikins*, 75 S.W.3d 383, 395-98 (Tenn. 2002) (analyzing vicarious liability for an attorney retained by the insurer). Since Heil exercised complete control over the litigation, the issues that arose in *Givens* as to the liability for the agent's actions are not present. Heil selected defense counsel, guided the litigation, and had the right to make decisions regarding settlement. *See id.* at 395. Thus, Heil is liable for Hebson's actions in the Alabama case. The failure to answer a complaint, respond to discovery requests, and entry of

---

[4]Although Defendant presents a choice of law argument in its motion for summary judgment, the Court notes Alabama and Tennessee agency law does not result in a conflict in this case. Therefore, the Court applies Tennessee law.

default judgment fall short of the obligation to provide a "proper defense." Heil's negligence caused

a judgment in excess of its self-insured retention amount and violated the endorsement. Therefore,

Heil did not meet the condition precedent to recovery and Evanston was not obligated to cover the

loss.


## IV.    CONCLUSION

For reasons discussed, summary judgment will be **GRANTED**.

An Order shall enter.


**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**